**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Stefan Bogdanovich (State Bar No. 324525)
Luke Sironski-White (State Bar No. 348441)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          sbogdanovich@bursor.com
          lsironski@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAIF JAFRI, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| SANDISK LLC, and WESTERN DIGITAL CORPORATION, | |
| Defendants. | |

Plaintiff Saif Jafri ("Plaintiff") brings this action on behalf of himself and all others similarly situated against SanDisk LLC ("SanDisk") and Western Digital Corporation ("Western Digital") (collectively, "Defendants").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of purchasers of defective SanDisk and Western Digital solid-state drives (the "SSDs" or the "Drives").[1]  These SSDs face an extreme risk of failing within months or even days of purchase due to a design and manufacturing defect (the "Defect").  "Drive failure" in this context means that all data from the Drives is lost, including the internal file system, and new data cannot be added even if the Drive is reformatted.[2]  After data has been stored on the Drives, failure can occur *without any further input from the user*.[3]  The result is that tens of thousands – or hundreds of thousands – of consumers and working professionals who have trusted SanDisk to safely store their data have lost untold terabytes with only a paperweight in the shape of an SSD to show for it.  A drive that has a Defect causing an extreme risk of failure and permanent data loss does not function as a drive and has no value; no reasonable consumer would pay hundreds of dollars for a storage device that has a high likelihood of failing at any time and causing permanent data loss.  No reasonable consumer would store their personal data on such a device.

---

[1] The specific drives at issue are the: (1) SanDisk Extreme Portable 4TB (SDSSDE61-4T00), (2) SanDisk Extreme Pro Portable 4TB (SDSSDE81-4T00), (3) SanDisk Extreme Pro Portable 2TB (SDSSDE81-2T00), (4) SanDisk Extreme Pro Portable 1TB (SDSSDE81-1T00), (5) SanDisk Pro-G40 Portable SSD, and (6) Western Digital My Passport 4TB (WDBAGF0040BGY).  "TB" stands for terabyte. One TB is equivalent to 1,000 gigabytes.

[2] *SanDisk Extreme SSDs keep abruptly failing – firmware fix for only some promised*, ARS TECHNICA, May 19, 2023 (https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/).

[3] *Buyer Beware: some SanDisk Extreme SSDs are wiping people's data*, THE VERGE, May 22, 2023 (https://www.theverge.com/2023/5/22/23733267/sandisk-extreme-pro-failure-ssd-firmware) ("Western Digital has now tacitly admitted that its SanDisk Extreme Pro portable solid-state drives were critically broken after all — by issuing a firmware update that'll hopefully keep the 4TB model from *wiping your data all by itself*.") (emphasis in original).

2.      This Defect in Defendants' SSDs goes to their core functionality—as a memory storage device.  Defendants market these defective SSDs to consumers as a place where they can "back up" a user's files "in *one location*."[4]  Defendants even ***encourage*** users to download their applications that will to "automatically move files from your device to your SSD to free up space,"[5] meaning that storage in other locations (as a failsafe or otherwise) ***is not necessary*** once data is loaded onto the Drives, according to Defendants.  For many consumers, this means transferring over thousands of photos and videos of precious moments with family and friends, among other personal data.  Yet once these SSD fail, this data is irretrievably lost, like the burning of the library at Alexandria.

3.      The Defect manifests in an identical manner across the Drives.  Every Drive manufactured has the Defect.  Accordingly, the Drives are substantially similar for purposes of this class action complaint.

4.      SanDisk has been "downplaying the issue for months,"[6] while continuing to encourage consumers to save more and more of their life's memories on these devices.  Defendants' one and only attempt at fixing the Defect in May 2023 was unsuccessful.[7]  Despite this, SanDisk continues to sell the Drives and has even placed them on steep discount in what outwardly appears to be an effort at clearing its shelves of defective stock, but no recall, reimbursement, or replacement program has been announced.

5.      The cause of the issue has not yet been made public, but those with knowledge in the field of solid-state drive technology have speculated that there is a design and manufacturing defect affecting all Drives manufactured on or after November 2022.

---

[4] SanDisk Extreme Pro Portable 4TB (SDSSDE81-4T00), WESTERN DIGITAL, https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25 (last accessed August 16, 2023).

[5] *Id.*

[6] *Id.*

[7] *We just lost 3TB of data on a SanDisk Extreme SSD*, THE VERGE, August 7, 2023 (https://www.theverge.com/22291828/sandisk-extreme-pro-portable-my-passport-failure-continued).

6.      Data creation and data storage is a central facet of modern life.  Defendants' ongoing failure to address these serious issues pertaining to the Drives is egregious and in contravention of California and federal law.

7.      Plaintiff Jafri asserts claims on behalf of himself, a nationwide class, and a California subclass of similarly situated purchasers of the affected Drives for: (i) breach of the implied warranty of merchantability; (ii) unjust enrichment; (iii) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (iv) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; and (v) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

**PARTIES**

8.      Plaintiff Saif Jafri is a citizen of California and resides in the city of Buena Park, California 90621.  On April 5, 2023 Plaintiff Jafri purchased a SanDisk Extreme Pro Portable SSD V2 with 2TB of storage from Amazon.com for $204.71.

9.      Mr. Jafri is a computer system security engineer for Yahoo.  He is deeply familiar with computers and data storage devices like the Drives at issue here.  Mr. Jafri is familiar with Western Digital and SanDisk products and has relied on Defendants to manufacture dependable and quality storage drives.  Mr. Jafri purchased the SanDisk Extreme Pro Portable SSD because he was traveling in a van for an extended period of time and needed a dependable storage solution for drone footage and photographs, mementos of his travels, that he was creating.  Mr. Jafri relied on Defendants' representations that the Drive was dependable, rugged, and ready to travel with him in all manner of conditions without a significant risk of losing his data.  Mr. Jafri's trust in Defendants products was unfortunately misplaced, as the Drive failed only a few weeks after he purchased it.  He had written data to the Drive no more than a handful of times, yet he nonetheless lost precious personal data.

10.      Mr. Jafri was not aware of the defect affecting the Drives, and only learned of the problem after his Drive failed on him and erased a substantial portion of the footage he had taken of his travels.  Had Mr. Jafri known about the issue before purchasing the Drive he would not have made the purchase and would have bought an SSD from another manufacturer.  Mr. Jafri may be

1    interested in purchasing Defendants' products in the future, so long as Defendants fix the Defects

2    and properly label their products going forward.

3        11.    SanDisk LLC is a Delaware limited liability company with headquarters in Milpitas,

4    California.  SanDisk is a wholly owned brand of Western Digital.

5        12.    Western Digital Corporation is a Delaware corporation with headquarters in San

6    Jose, California.  Western Digital acquired SanDisk Corporation in 2016, and has designed and

7    manufactured all SanDisk products since.  Accordingly, Western Digital designed and

8    manufactured the defective Drives at issue in this action.

9                                    **JURISDICTION AND VENUE**

10       13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

11   1332(d) because there are more than 100 class members and the aggregate amount in controversy

12   exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a

13   citizen of a state different from Defendants.

14       14.    This Court has personal jurisdiction over Defendants because Defendants conduct

15   substantial business within California, such that Defendants has significant, continuous, and

16   pervasive contacts with the State of California.  Additionally, Defendants' principal places of

17   business are in this District.

18       15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do

19   substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims

20   took place within this District (*e.g.*, the research, development, design, and marketing of the SSDs),

21   and Defendants' principal places of business are in this District.

22                                      **FACTUAL ALLEGATIONS**

23   **General Factual Overview**

24       16.    Solid-state drives are a type of long-term data storage device.  As the name

25   suggests, solid-state drives have no moving parts.  Information is written and retrieved from flash

26   memory chips electrically.[8]  In layman's terms, SSDs are an evolution of magnetic-based "hard

27   ───────────────────────────

28   [8] *What is a solid-state drive?*, IBM (https://www.ibm.com/topics/solid-state-drives#:~:text=A%20solid%2Dstate%20drive%20(SSD,known%20as%20pages%20or%20sectors)

drives" traditionally found in desktop computers.  SSDs are basically the next generation of hard drives.  The vast majority of computers and laptops sold in recent years use SSDs instead of legacy magnetic-based hard drives, which are now a rarity.  SSDs are ubiquitous.

17.    There are many manufacturers who make SSDs.  Since SSDs are used as the primary storage solution in consumer, commercial, and industrial applications, the industry tracks malfunction and error rates, and there are statistics on expected rates of drive failure (just as there are statistics on expected failure rates on many forms of commercial equipment).

18.    In an SSD, flash memory chips are soldered onto a larger circuit board which comprises the SSD proper.[9]  If the SSD is plugged directly into a computer motherboard, the board is left exposed.  If the SSD is going to be used on multiple machines or taken on the road, it is usually encased in a plastic housing which has a USB connection for interfacing with computers – this whole unit is what is colloquially known as a "portable SSD."  This means that SSDs can be internal or external.

 

*An SSD for internal use*                    *A SanDisk Extreme Pro Portable SSD*

---
[9] *Id.*



*A disassembled SanDisk Extreme Pro Portable SSD*

19.     A hard disc drive ("HDD"), on the other hand, is a platter of magnetic metal discs which are read from and written to with a magnetic stylus that skims back and forth just nanometers above the discs as they spin at upwards of 7,600 RPM, like the world's fastest and most precise record player.[10]

20.     SSDs have exponentially faster read and write times granted by solid-state storage. This means that SSDs have become the de facto mode of data storage, especially in scenarios where consumers need to quickly access and store data while on-the-go.

21.     Both SSDs and HDDs should be expected to last *at least* three (3) to five (5) years with regular use.[11]   An HDD typically fails because of the immense physical stress that the metal discs are placed under as they spin.  SSDs are different in that they typically fail after a large amount of data has been written to the drive.

22.     Manufacturers of SSDs use "total terabytes written" (TBW) as the metric by which they estimate the useful life of the drive to consumers.  For example, if an SSD had a TBW of 2,000 terabytes ("TB"), after a user had written 2,000 TB to the drive they may begin to experience data loss and corruption.

[10] *What is a hard disk drive (HDD)?*, CRUCIAL (https://www.crucial.com/articles/pc-builders/what-is-a-hard-drive).

[11] *How Long Do Hard Drives (and SSDs) Last?*, NEWEGG.COM, June 21, 2021 (https://www.newegg.com/insider/how-long-do-hard-drives-and-ssds-last/)

23.     The TBW for the Drives at issue in this case are unlisted, however, upon information and belief, were it not for the defect it would be in the hundreds or thousands of terabytes, depending on the model of Drive and its storage capacity.

24.     Reasonable consumers like Plaintiff thus purchase SSDs with the expectation that they will last years before being at risk of failure.

**Defendants' Products and the Defect**

25.     Defendants are engaged primarily in the manufacture and sale of computer drives and data storage solutions, and they are a near household name when it comes to SSDs.

26.     Defendants are the second largest manufacturers and retailers of SSDs in the world with a revenue of $18.79 billion in 2022 alone.[12]

27.     Both SanDisk (before it was acquired) and Western Digital have been players in the data storage market for decades.  SanDisk was founded in 1988 and Western Digital was founded in 1970 as General Digital Corporation.

28.     Because of their longstanding position at the top of the market, consumers have grown to recognize the Western Digital and SanDisk branded drives as being high-quality, dependable, products.

29.     Defendants lean into their reputability and represent their Drives as being high-quality and dependable.

30.     As of late, however, Defendants' reputation for quality and dependability has taken a nosedive.

31.     In January 2023 complaints began to surface that SanDisk's Extreme and Extreme Pro Portable SSDs were suddenly wiping data and becoming unreadable.[13]

32.     In February 2023 a Reddit user raised a flag warning about the SanDisk 4TB Extreme Pro Portable SSDs in particular, saying: "Multiple DITs/Loaders/ACs on both coasts have

---

[12] Western Digital Reports Fiscal Fourth Quarter and Fiscal Year 2022 Financial Results, WESTERN DIGITAL, August 8, 2023, https://www.westerndigital.com/company/newsroom/press-releases/2022/2022-08--05-western-digital-reports-fiscal-fourth-quarter-and-fiscal-year-2022-financial-results/.

[13] *See Supra* Note 2.

experienced the exact same failure with these drives over the last month.  The symptom seems to be that after a sustained write they will completely lose their filesystem and it's a total crap shoot whether you can recover it or not."  261 comments were posted in reply to the warning, with many users chiming in that they had experienced the same issue with their SanDisk Drives.

33.    The tech press took notice of the issue in May when many of their own staffers began to experience data loss.  One producer for tech news site *The Verge* reported losing upwards of 4TB of video footage *multiple times* after two SanDisk 4TB Extreme Pro Portable SSDs failed, the second of which was a replacement sent by Defendants.[14]

34.    Another staffer, this time for *Ars Technica*, another well-known tech news site, reported losing two SanDisk 2TB Extreme Pro SSDs.[15]

35.    After multiple articles calling attention to the problem, Defendants pushed a firmware update for the affected drives at the end of May.[16]  Defendants claimed that this would solve the problem, saying "[w]e addressed this firmware issue in the manufacturing process, and we can confirm that the issue is not impacting currently shipping products."[17]

36.    However, even after the May firmware update, the problems persisted.  On July 26, 2023 another Reddit user posted a comment stating: "I had one of the 4TBs unmount on a mac and become unmountable after that.  **I applied the firmware update, and about a week after that, I was transferring some files from my Android device to it and it did the same thing, unmounted and would no longer mount unless you formatted it.**  The data could be recovered with Diskdrill, but with generic serialized names.  The first time the drive failed, I was unaware of the problem and actually lost a lot of critical data."[18]  (Emphasis added).

---

[14] *See Supra* Note 3.

[15] *See Supra* Note 2.

[16] *SanDisk's silence deafens as high-profile users say Extreme SSDs still broken* , ARS TECHNICA, Aug. 10, 2023 (https://arstechnica.com/gadgets/2023/08/sandisk-extreme-ssds-are-still-wiping-data-after-firmware-fix-users-say/).

[17] *Supra* Note 2

[18] https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds/

37.     On August 7, 2023 a staffer at *The Verge* had yet another SSD fail.[19]

38.     On August 10, 2023 another Reddit user posted: "I literally lost all my data two weeks ago thanks to SanDisk.  And my backup drive, a WD passport, failed on the same night.  SanDisk is owned by WD.  So guess all WD drives are shit.  I lost 5 years of work."[20]

39.     That same day, another Reddit user posted: "I work in digital media and have had an untold number of friends and colleagues lose data because of the recent SanDisk drive failures.  I personally had two brand new Extreme Pro SSDs corrupt this summer, both within days of purchasing.  I've used these drives for years and never lost data before, but twice in two weeks has scared me away from ever purchasing Sansdisk storage again."[21]

40.     Many of the consumers affected by the defect are professionals who have had decades of experience with use and maintenance of data-storage devices.  The failures were not a result of user error, but symptomatic of a widespread defect in the design and manufacture of the drives.

41.     This slew of Drive failures is contrary to Defendants' representations.  Indeed, Defendant SanDisk represents its Extreme Pro line of SSDs as "a rugged, dependable storage solution" that is "reliable enough to take on any adventure."[22]  Defendant SanDisk makes essentially the same representations about its non-Pro line of Extreme SSDs, describing them as "durable drive[s] that can take a beating" with "Professional-Grade Storage."

**Defendants Knew or Should Have Known About the Issue Since at Least January 2023**

42.     SanDisk appears to have been on notice of this problem for a significant amount of time.  In March of 2023, Reddit user KengoSawa2 posted: "This problem is also occurring in Japan.  I am a post-production engineer and I encountered the same problem.  I can't give you more details, **but the problem was recognized by the Japanese distributor and passed on to**

---

[19] *See Supra* Note 5.

[20] https://www.reddit.com/r/gadgets/comments/15noi3k/sandisks_silence_deafens_as_highprofile_users_say/

[21] *Id.*

[22] https://www.westerndigital.com/products/portable-drives/sandisk-extreme-pro-usb-3-2-ssd#SDSSDE81-1T00-G25

**SanDisk**, and is now being verified by the developer.  I am also told that this problem is causing a fuss and is only for those manufactured after November 2022.  My gut feeling is that this appears to be a design defect due to a minor change or a lot defect due to a problem during manufacturing. In any case, we should continue to report this to the manufacturer to prompt an official statement from Sandisk."[23] (Emphasis added).

43.     Despite this, Defendants have not recalled the Drives or taken any action to remove the Drives from the market.  Instead, it appears that Defendants have been astroturfing their reviews and selling the Drives at a steep discount, upwards of 66% in some instances.

44.     The reviews depicted below, ostensibly written three days apart feature many of the same awkward marketing phrases and talking points:

---

[23] https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



45.     Defendants' bald-faced attempt at hocking their defective Drives does nothing to change the situation for the thousands of consumers who have lost their data.  It does nothing to help them recover that data.  All it does is place an ever-growing population of consumers, who trust Defendants products, at risk of losing critical data.

## CLASS ALLEGATIONS

46.     Plaintiff Saif Jafri brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and all other similarly situated consumers, and seeks to represent a class defined as:

> All persons in the United States who purchased any Drives manufactured after November 2022 (the "**Class**").  Excluded from the Class are persons who made such purchase for purpose of resale.

47.     Plaintiff also seeks to represent a subclass of all Class members who purchased an affected Drive manufactured after November 2022 in California (the "**California Subclass**").

48.     Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclass number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

49.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)     Whether the Drives are defective;

(b)     Whether the defect is hardware based or software based; and

(c)     Whether Defendants knew about the defect before selling the Drives to the public.

50.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased Defendants' SSDs in reliance on the representations and warranties described above, experienced the melting defect, and suffered a loss as a result of that purchase.

51.     Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

52.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Breach of the Implied Warranty of Merchantability

53.     Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

54.     Plaintiff brings this claim individually and on behalf of the Class and Subclass members against Defendants.

55.     Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, of the Drives impliedly warranted that the Drives were fit for use as data storage devices.  In fact,

Plaintiff and Class members experienced their Drives suddenly wiping all of their data and ceasing to store any more data, rendering the Drives useless.

56.      Defendants breached the warranty implied in the contract for the sale of the Drives because the Drives could not "pass without objection in the trade under the contract description," the goods were not "of fair average quality within the description," the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability).  As a result, Plaintiff and the Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

57.      Plaintiff and Class members purchased the Drives in reliance upon Defendants' skill and judgment and decades of experience in the data storage field in properly packaging, labeling, and marketing the Drives.

58.      The Drives were not altered by Plaintiff or Class members.

59.      The Drives were defective when they left the Defendants' exclusive control.

60.      Defendants knew that the Drives would be purchased and used without additional testing by Plaintiff and Class members.

61.      The Drives were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

62.      As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and the Class and Subclass members have been injured and harmed because they would not have purchased the Drives if they knew the truth about the Drives.  As received by Plaintiff and the Class Members, the Drives are worthless.

## COUNT II
**Unjust Enrichment**

63.      Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

64.      Plaintiff brings this claim individually and on behalf of the Class and Subclass members against Defendants.

65.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and the Class Members' purchases of the Drives.  Retention of those monies under these circumstances is unjust and inequitable because Defendants failed to disclose that the Drives are defective and pose a significant risk of sudden data loss within months or even days of purchase and use, rendering the Drives unfit for sale.  Defendants' misrepresentations and/or material omissions caused injuries to Plaintiff and the Class Members because they would not have purchased the Drives if the true facts were known.

66.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class and Subclass Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class and Subclass Members for its unjust enrichment, as ordered by the Court.

## COUNT III
**Violation of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**

67.     Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

68.     Plaintiff brings this claim individually and on behalf of the California Subclass members against Defendants.

69.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.  A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

70.     As alleged above, Defendants have committed unlawful, fraudulent, and/or unfair business practices under the UCL by: (a) representing that Defendants' Products have certain

characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

71. Defendants' conduct has the capacity to mislead a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.

72. Defendants' conduct has injured Plaintiff and the Class he seeks to represent in that he paid money for a product that he would not have purchased but for Defendants' failure to disclose or remedy the defect. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendants' conduct.

73. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other Class members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff and the Class members' attorneys' fees and costs.

74. Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled. Further, Plaintiff and the Class members have or will have suffered data loss. All of the memories and work product that has been lost may be retrievable, at a cost. This cost goes beyond merely the purchase price of the product, but to fully compensate Plaintiff and the Class members for their loss justice dictates that Defendants pay for data retrieval services for all those affected.

75. Injunctive relief is also appropriate, and indeed necessary, to require Defendants to provide full and accurate disclosures regarding the Product so that Plaintiff and Class members can reasonably rely on Defendants' packaging as well as those of Defendants' competitors who may then have an incentive to follow Defendants' deceptive practices, further misleading consumers.

76.     Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, payment for data retrieval services, and an injunction requiring Defendant to recall the Drives and warn consumers about the defect, will ensure that Plaintiff and the Class are in the same place they would have been in had Defendants' wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Drives absent omissions with the full purchase price at their disposal.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(Injunctive Relief Only)**

77.     Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

78.     Plaintiff brings this claim individually and on behalf of the California Subclass members against Defendants.

79.     Plaintiff and the California Subclass members are consumers within the meaning of Cal. Civ. Code § 1761(d).

80.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which she or she does not have."

81.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

82.     Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

83.     Defendants violated Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) by intentionally and misleadingly representing that its Drives are capable and dependable solid-state drives, a fact which was material to Plaintiff and reasonable consumers.

84.     Defendants' misrepresentations and omissions deceived, and have a tendency and ability to deceive, reasonable consumers and the general public.

85.     Defendants have exclusive or superior knowledge of the cause of the defect and which of its products are affected, which was not known to Plaintiff or the California Subclass members.

86.     Plaintiff and the California Subclass Members have suffered harm as a result of these violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.  Had Plaintiff and the California Subclass members known that the Drives were fatally defective and had a significant risk of spontaneous data loss, they would not have purchased them.

87.     Plaintiff, on behalf of himself and all other members the California Subclass, seeks an injunction prohibiting Defendants from continuing their unlawful practices in violation of the CLRA.

88.     In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendants on August 17, 2023, informing Defendants of his intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendants fail to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendants' violations of the CLRA.

**COUNT V**
**Violation of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

89.     Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

90.     Plaintiff brings this claim individually and on behalf of the California Subclass members against Defendants.

91.     Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive California Subclass members and the public.  As described above, and throughout this Complaint, Defendants misrepresented that their Drives were dependable and capable solid-state drives.  Such representations are not true because the Drives have an outsized risk of catastrophic failure resulting in full data loss.

92.     By its actions, Defendants disseminated uniform advertising regarding its Drives to and across California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL").  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

93.     The above-described false, misleading, and deceptive advertising Defendants disseminated continues to have a likelihood to deceive in that Defendants continues to misrepresent, without qualification, that the Drives are dependable and fit for use as data storage devices.

94.     In making and disseminating these statements, Defendants knew, or should have known, their advertisements were untrue and misleading in violation of California law.  Defendants know that their Drives are seriously defective, yet do not disclose this fact to consumers.

95.     Plaintiff and the California Subclass members purchased the Drives based on Defendants' misrepresentations and omissions.

96.     Defendants' misrepresentations and non-disclosures of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of the FAL.

97.     As a result of Defendants' wrongful conduct, Plaintiff and the California Subclass members lost money in an amount to be proven at trial.  Plaintiff and the California Subclass are therefore entitled to restitution as appropriate for this cause of action.

98.     Plaintiff and the California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5; and other appropriate equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

(b)     For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class and the California Subclass reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

1  Dated:  August 17, 2023

2

3

**BURSOR & FISHER, P.A.**

By:  ___/s/ Neal J. Deckant_____
Neal J. Deckant

4  Neal J. Deckant (State Bar No. 322946)

5  Stefan Bogdanovich (State Bar No. 324525)
Luke Sironski-White (State Bar No. 348441)

6  1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596

7  Telephone: (925) 300-4455
Facsimile: (925) 407-2700

8  E-mail: ndeckant@bursor.com

9         sbogdanovich@bursor.com
         lsironski@bursor.com

10  *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Neal J. Deckant, declare as follows:

1.     I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.     The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff Saif Jafri resides in this District.

3.     Plaintiff Saif Jafri is a resident of Buena Park, California.

4.     Defendant Western Digital Corporation is a Delaware company with its principal place of business in San Jose, California.

5.     Defendant SanDisk LLC is a Delaware company with its principal place of business in Milpitas, California

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on August 17, 2023, at Walnut Creek, California.


_____
Neal J. Deckant